Irene **GUTHRIDGE** and Lawrence Guthridge, Plaintiffs,

v.

**PEN–MOD, INC.**, a corporation of the Commonwealth of Pennsylvania, and A. B. C. Finance Company, a corporation of the State of Delaware, Defendants.

Superior Court of Delaware.

New Castle.

Nov. 2, 1967.

Stephen B. Potter, Wilmington, for plaintiffs.

James F. Kruzinski, Wilmington, for defendants.

## CHARGE OF THE COURT

CHRISTIE, Judge.

Members of the jury, this case is a civil action brought by Irene V. Guthridge and Lawrence Guthridge, whom I shall refer to as the plaintiffs, against the defendants, Pen-Mod, Incorporated, a corporation of the Commonwealth of Pennsylvania, and A. B. C. Finance Company, a Delaware corporation. The action is based upon an allegation that the defendant corporations violated the plaintiffs' right of privacy to such an extent that defendants are liable to plaintiffs for money damages.

I shall not review the contentions of the parties in any detail. You have just heard the attorneys review these contentions and I shall repeat them only to the extent necessary in order to explain the law to you.

■■■ You are the sole and exclusive judges of the facts of the case, of the credibility of the witnesses and of the weight and value of their testimony. It is not proper for the Court to comment on the testimony but it is proper that I point out to you certain applicable principles of law.

■■■ Generally, the law recognizes that every person has a right to some degree of privacy. This right is sometimes called the right to be let alone. Among the invasions of privacy which may form the basis of a suit for damages are, one, intrusion of a person's physical solitude; two, publication of private matters violating ordinary decencies; three, putting a person in a false position in the public eye, as by signing his name to a letter attributing to him views which he does not hold; four, appropriation of some element of a person's personality for commercial use, such as commercial use of a photograph without permission of the person photographed. See Prosser On Torts, 2d Ed. page 635, quoted with approval in Barbieri v. News Journal Company, Del., 189 A.2d 773 (1963).

In this case plaintiffs contend that defendants made an unreasonable intrusion on plaintiffs' physical solitude and defendants deny this charge.

■■■ You will notice that in the present case both of the defendants are corporations. Under the law corporations like people, may sue or be sued but since a cor-

poration is an artificial entity and not itself a living being, it can act only through its servants, agents or employees. The acts of the employees of the corporations under the circumstances present in this case may be regarded as the acts of the corporations themselves.

There are two corporate defendants but the undisputed evidence indicates that each is a wholly-owned subsidiary corporation of the same parent corporation and that they shared the same employees and the same office. For purposes of this case the two defendants may be regarded as one corporate entity and any judgment which you render in relation to these corporations will apply to both corporations.

You will also note that there are two separate plaintiffs in this case and each is seeking separate damages for wrongs he or she claims to have suffered. Please remember that as to the Guthridges you will have to make separate determinations and thus you must decide whether liability exists as to both plaintiffs, as to only one of the plaintiffs or as to neither plaintiff. If you find that the defendants are liable to either plaintiff or to both plaintiffs then you will be called upon to determine how much money should be awarded to such plaintiff or plaintiffs.

The undisputed testimony tends to show that plaintiffs signed papers, including what is called a judgment note, by which they obligated themselves or apparently obligated themselves to repay a loan by installments of $66.76 per month. This obligation was assigned by the original holder thereof to one of the corporate defendants. It doesn't matter which corporate defendant. Judgment was duly recorded on this note at the Prothonotary's Office. The Prothonotary's Office is the Clerk of the Court's office. Such recorded judgment became roughly equivalent to a Court judgment. Thereafter the obligation was assigned to the other corporate defendant.

Plaintiffs made regular payments on this obligation from early 1964 until the payment which was said to be due on August 10, 1966. But in the summer of 1966 plaintiffs filed a suit by which they sought to have the judgment previously entered against them set aside and after that they ceased to make the monthly payments they had theretofore made. This litigation is still pending and has not been resolved.

■ In the absence of a Court ruling declaring the judgment invalid or suspending the payments thereunder, the jury is instructed that the law will presume that the judgment heretofore entered represents a valid debt to the extent that the defendant corporations were free to regard the Guthridges as subject to a continuing obligation under the terms of their agreement to make the stipulated payments on the unpaid balance of the judgment. In other words, the filing of a suit contesting the validity of the judgment already entered in the Court records does not thereby make it improper for the creditor to continue reasonable efforts to collect sums which the creditor believes to be due him.

On the other hand, the jury may take into consideration the existence of this pending suit, which I have referred to, contesting the validity of the obligation, in determining whether or not the defendant corporations were guilty of such unreasonable actions as to constitute an actionable invasion of the plaintiffs' right of privacy.

It is also undisputed that after plaintiffs filed suit and ceased making payments on the alleged obligation, defendants sent five written communications to Mr. Guthridge. These communications are in evidence. They consist of two notices and three letters in connection with the unpaid installments. From this point on the evidence appears to be in conflict as to what actually happened between the parties, particularly in respect to telephone calls. It is agreed that the defendants did telephone plaintiffs from time to time in the late summer and early fall of 1966. Plaintiffs, however, contend that these calls were so numerous and so timed and were conducted in such a

way as to go beyond reasonable attempts to collect an alleged debt.

Defendants contend, on the other hand, that the calls were conducted in a reasonable and polite manner and at reasonable intervals and that steps taken in an attempt to collect the sums alleged to be due did not constitute an actionable invasion of the plaintiffs' privacy.

The jury's duty in connection with the liability phase of this case is twofold. First you must determine between yourselves what actually happened between the parties, particularly in respect to the phone calls, and, second, you must determine whether defendants' actions went so far beyond the reasonable steps which a creditor may reasonably be expected to take under similar circumstances as to constitute an actionable invasion of the privacy of the plaintiffs.

The burden is on the plaintiffs to prove by a preponderance of the evidence both that the defendants did what plaintiffs say the defendants did and also to prove that such acts were so unreasonable under all of the circumstances as to constitute an actionable invasion of privacy.

■■ I have said that the plaintiff must prove the case by a preponderance of the evidence. A preponderance of the evidence is said to exist upon the side which presents the evidence most worthy of belief to the jury and which the jury finds possible to adopt as the correct version of what happened. If the evidence is in even balance in a case then the side having the duty to prove something by a preponderance of the evidence has failed to prove it by such preponderance. The phrase, "preponderance of the evidence," of course does not refer to the side which presented the greater volume of evidence or the greater number of witnesses, but rather to the side which convinced the jury of the truth of the testimony presented.

As I mentioned earlier, it is not proper for the Court to comment on the evidence. Therefore, there is nothing more to be said

about your duty to decide what did actually occur between the parties. However, your second duty is to evaluate or consider the actions of the parties under all the circumstances, to determine whether defendants' actions went so far beyond the actions which may be expected of a reasonable creditor under like circumstances as to be an actionable invasion of plaintiffs' privacy because such actions amounted to undue harassment.

■ Creditors or those believing, in good faith, that they are creditors, may take reasonable steps in an attempt to persuade people to pay alleged debts. But creditors may not deliberately harass the debtor or set out to make life miserable for the debtor. Creditors may not engage in a systematic campaign of harassment.

■■ On the subject of the standard to which a reasonable creditor may be expected to adhere, please bear in mind the following additional instructions: The mere efforts of a creditor to collect a debt cannot, without more, be considered a wrongful and actionable intrusion of privacy. A creditor has and must have the right to take reasonable action to pursue his debtor and to collect his debt. But the right to pursue the debtor is not a license to outrage the debtor. The problem of defining the scope of the right of privacy in the debtor-creditor situation is the problem of balancing the interest of the creditor in collecting his debt against that of the debtor in his own privacy. A creditor has a right to take reasonable action to pursue a debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy. But the debtor has a cause of action for injurious conduct on the part of the creditor if the creditor's conduct exceeds the bounds of reasonableness under all the circumstances.

The phrase, "reasonable action," is of course not one for which exact legal definition can be prescribed. What constitutes reasonable action must depend largely upon

the facts of a particular case. If the creditor deliberately initiated a systematic campaign of harassment of the plaintiffs, this would exceed the bounds of reasonableness.

It should be apparent from this that the right of privacy is not an absolute right but, rather, is a qualified right and is qualified by the circumstances and also by the rights of others. A recluse who leaves the community altogether might well expect no interference whatsoever from the outside world. But people who obtain credit may expect reasonable contact from those with whom they do business or from whom they receive credit. When a person accepts credit he impliedly consents to the creditor taking reasonable steps to attempt to collect the amount loaned. See Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (Alabama, 1961).

If you find the testimony to be conflicting by reason of inconsistencies it is your duty to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to give credit to that portion of the testimony which in your judgment is most worthy of credit and to disregard entirely that portion of the testimony which you find to be unworthy of credit.

In so doing, you should take into consideration the demeanor of the witnesses as they appeared before you, their apparent fairness or unfairness in giving their testimony, their opportunities of learning or knowing the facts about which they testified, and any bias or interest which you may feel they have concerning the outcome of this proceeding.

If you find that one or both of the plaintiffs have established by a preponderance of the evidence that the defendants' actions under all the circumstances were so unreasonable as to constitute an actionable invasion of one or both of the plaintiffs' rights to privacy, then your verdict should be for such plaintiff or plaintiffs and you must address yourself to the issue of damages.

In a case such as this damages may be awarded from one or more of three different categories: first, nominal damages, second, general compensatory damages, and third, punitive or exemplary damages.

Let us consider the first type. Nominal damages are not given as an equivalent for the wrong but rather merely in recognition of a technical injury and by way of declaring the rights of the plaintiffs. In reality, nominal damages are damages in name only, not damages in fact. Nominal damages are assessed in some trifling or trivial amount, such as six cents or one dollar, an amount selected simply for the purpose of declaring an infraction of the plaintiffs' rights and the commission of a wrong.

If you find from a preponderance of the evidence that defendants' conduct was such as to constitute an actionable invasion of the privacy of one or both of the plaintiffs but you do not find that the wrong done would reasonably justify an award of more than nominal damages, then as to such plaintiff or plaintiffs you would make a nominal sum such as six cents or one dollar.

On the other hand, if you find from a preponderance of the evidence that the defendants are liable and that the plaintiffs suffered damage from the defendants' wrongful conduct, which conduct would not be adequately compensated by mere nominal damages, then you may award general compensatory damages rather than mere nominal damages. This type of damages may be awarded to plaintiffs instead of nominal damages and without regard to whether or not there is evidence of out of pocket losses. General compensatory damages are such as the law will presume to be the natural and probable consequences of the defendants' wrongful conduct and which the law allows for the

harm which normally results from such invasion of privacy. The harm for which general compensatory damages may be awarded is the wrong to a plaintiff's person and any mental suffering or embarrassment which may be the natural and probable consequence of the defendants' wrongful conduct. Physical discomfort, if it is a direct result of the wrongful conduct of the defendants, is a proper item of damage to be considered by you in this connection.

Please bear in mind in your consideration of damages, if you reach that consideration, that the difficulty of applying the standards which I have spelled out for you and the difficulty of determining a proper amount of compensatory damages does not have any bearing on whether or not such compensatory damages are due, and if you are unanimous in your belief that compensatory damages are due, it is your duty to attempt to agree upon a proper and reasonable amount of compensatory damages, even though the standards given to you are difficult to apply.

 The third possible category of damages which you may consider is what is known as punitive or exemplary damages. If punitive damages are awarded to either of the plaintiffs, such damages are in addition to compensatory damages. Punitive damages may be awarded only if the jury finds by a preponderance of the evidence that the defendants' actions were motivated by some form of malice; that is, by ill-will, hatred, spite, or a conscious desire to do injury and hurt the plaintiffs. Punitive damages are awarded to punish the defendants for conduct found to be especially reprehensible. Such damages may serve as an example to the community at large. The amount of such damages, if any, is left to the sound judgment of the jury. But such damages, if awarded, should be reasonably related to all of the surrounding circumstances, including the wrong done and the circumstances, financial and otherwise, of the respective parties.

If punitive damages are awarded as to Mrs. Guthridge's action, question No. 3 should be answered in the affirmative and the amount of the punitive damage award should be inserted therein.

Likewise, if punitive damages are awarded as to Mr. Guthridge's action, question No. 6 should be answered in the affirmative and the amount awarded as punitive damages should be inserted therein.

I have spent a considerable amount of time explaining to you the damages which you may award in this case if you find for the plaintiffs. In so doing I have not indicated in any way that you should or should not find for the plaintiffs. If you find for the defendants of course, you will not address yourselves to the damage problems.

The verdict was for the defendants.